VICTOR MARRERO, United States District Judge.
Plaintiff Walied Shater ("Shater") brought this action against defendant MetLife, Inc.[1] ("MetLife"), alleging that MetLife engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). ("Complaint," Dkt. No. 1.) Specifically, Shater alleges that MetLife refused to hire him because of his religion or national origin.
According to the Complaint, Shater is an Arab-American Muslim and a security professional who applied for employment as a Vice President, Global Corporate Security in MetLife's Dubai office. After three interviews with MetLife employees, Shater contacted a MetLife recruiter, who informed him, on November 14, 2014, that the company "[is] not going to be moving forward at this time. I'll let you know if things change." (Id. ¶ 8.) Shater heard nothing more from MetLife. But, during a meeting with industry colleagues in Dubai in October 2015, Shater learned that, to fill that position, MetLife had hired a white, European, non-Muslim individual who, Shater asserts, lacked many of the published core job qualifications. Thereafter, on January 26, 2016, Shater filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").
By letter dated July 31, 2018, MetLife notified the Court of its intent to move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (" Rule 12(b)(6)"). ("July 31 Letter," Dkt. No. 4.) MetLife argues that the Complaint should be dismissed because (1) MetLife is not an employer pursuant to Title VII since it has zero employees, and (2) Shater's claims are time-barred because he knew of his injury when he received the MetLife recruiter's e-mail on November 14, 2014. In a footnote, MetLife further contends that American Life Insurance Co. ("American Life"), its wholly-owned subsidiary, would have been Shater's employer had he been hired, and MetLife Group, Inc. ("MetLife Group") employed the recruiter and interviewers with whom Shater interacted.
By letter dated August 6, 2018, Shater responded to the July 31 Letter and opposed MetLife's request to file a motion to *358 dismiss. ("August 6 Letter," Dkt. No. 5.) Shater argues that (1) MetLife's status as an employer under Title VII is a factual dispute not subject to a Rule 12(b)(6) motion, and (2) the 300-day limitation period should be equitably tolled because the MetLife recruiter's November 14, 2014 e-mail was intentionally misleading. In the August 6 Letter, Shater also offers to amend the Complaint to name American Life as a defendant but refuses to dismiss MetLife as a defendant.
By letter dated August 17, 2018, MetLife informed the Court that the parties were unable to resolve their dispute. ("August 17 Letter," Dkt. No. 6.) Accordingly, MetLife requested a pre-motion conference to discuss its contemplated motion to dismiss.
On September 25, 2018, the Court held a telephone conference (the "September 25 Telephone Conference") during which it heard arguments from the parties and reached certain conclusions. (See Dkt. Minute Entry for 9/25/2018.) The Court first proposed that Shater substitute the correct MetLife-related entity for MetLife as the defendant, an amendment to which both Shater and MetLife agreed. Secondly, the Court advised the parties that the Complaint appears to contain sufficiently particular factual allegations supporting Shater's legal claims to survive a motion to dismiss, but directed the parties to submit additional letters regarding the issue of equitable tolling. Thirdly, the Court and the parties agreed that Shater could amend the Complaint after the Court's resolution of the issue of equitable tolling.
On October 22, 2018, MetLife submitted a letter to the Court in further support of its position that Shater's claims are time-barred. ("October 22 Letter," Dkt. No. 8.) MetLife argues that Shater became aware of his injury on November 14, 2014 -- 438 days prior to the filing of his EEOC charge (and, according to MetLife, 138 days past the 300-day limitation period), thus making his claims time-barred. MetLife further contends that neither the doctrine of equitable tolling nor equitable estoppel apply to save the claims in this action. Specifically, MetLife argues that the doctrine of equitable tolling is inapplicable to this action because Shater "makes no allegation that MetLife engaged in any wrongdoing, misrepresentations, or attempts to prevent or delay him from discovering that he would not be hired and who had been hired for [the position]," and similarly makes no allegation that Shater acted with reasonable diligence during the time period he seeks to have tolled. (Id. at 2.) Separately, MetLife argues that the doctrine of equitable estoppel is inapplicable to this action because Shater "does not allege that MetLife engaged in any wrongdoing, made any misrepresentations, or any attempts to prevent or delay him from filing his charge with the EEOC." (Id. at 3.)
On October 29, 2018, Shater responded to the October 22 Letter, arguing in further support of his position that the Complaint is not time-barred. ("October 29 Letter," Dkt. No. 10.) Shater contends that "[his] mere knowledge that he had not been hired does not trigger the 300-day charge-filing period." (Id. at 1.) Furthermore, according to Shater, the MetLife recruiter's November 14, 2014 e-mail was deceptive and/or obfuscatory because "[t]he most plausible reading of the [e-mail] is that no successful candidate had been selected but that that might change, i.e., MetLife might hire someone for the position." (Id. at 2.) Therefore, Shater argues, because he reasonably interpreted the recruiter's message to mean that MetLife had decided not to fill the position with anyone -- in effect to withdraw the job from the market -- the 300-day limitation period should be equitably tolled and, *359 consequently, the Complaint should not be dismissed.
The Court now construes MetLife's July 31 and October 22 Letters as a motion to dismiss the Complaint pursuant to Rule 12(b)(6) on the basis that Shater's claims are time-barred.
Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.
The task of a court is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 573-74 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., Inc., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006) ; accord In re MF Global Holdings Ltd. Sec. Litig., 982 F.Supp.2d 277, 302 (S.D.N.Y. 2013). The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. In passing upon a motion to dismiss, the Court must draw reasonable inferences and resolve any doubts in favor of the plaintiff. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).
The Court is not persuaded that dismissal of the Complaint is warranted under Rule 12(b)(6). "To sustain a claim for unlawful discrimination under Title VII ... a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5 (e) (1) ). In the event the 300-day limitation period has expired, the doctrine of equitable tolling applies in those rare circumstances where "a party is prevented in some extraordinary way from exercising his rights," Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks omitted), such as "where the complainant has been induced or tricked by his adversary's misconduct." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). "Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004).
The Court considers the questions of whether the 300-day limitation period expired prior to Shater filing his EEOC charge and whether the doctrine of equitable tolling applies to this action to be close calls. The Court finds that there exists some ambiguity regarding the meaning of the MetLife recruiter's November 14, 2014 e-mail. Specifically, it is unclear whether the recruiter's statement that the company "[is] not going to be moving forward at this time" (Complaint ¶ 8) could reasonably have been understood to mean that no *360 successful candidate had been chosen and that MetLife had decided not to fill the position at all (as Shater argues), or whether it could only reasonably have been understood to mean that Shater, specifically, had not been chosen (as MetLife argues). It is also unclear whether, as Shater argues, "defendant deceived him" by sending the November 14, 2014 e-mail. (October 29 Letter at 3.) An assessment of the context of the recruiter's message depends, in part, on a determination of when MetLife filled with a different candidate the position for which Shater applied.[2] If in fact the job had already been offered or given to another person at the time the MetLife recruiter sent the November 14, 2014 e-mail, that circumstance might lend support to Shater's theory of deception, especially in light of the recruiter's statement that she would "let [Shater] know if things change." (Complaint ¶ 8.) Without reaching the merits of this question, the Court finds this to be an important factual question that can only be answered by discovery. The Court also notes that approximately eleven months lapsed between the date of the MetLife recruiter's November 2014 e-mail and the October 2015 meeting with industry colleagues at which Shater learned that a different candidate had been hired for the position.
The Court therefore finds that questions of material fact exist in this action that would render dismissal inappropriate at this time. The first is whether, relying on the November 14, 2014 e-mail, a reasonable person would have thought that the MetLife position remained open eleven months after receiving the MetLife recruiter's e-mail and without further effort to check on the status of the position. The second is whether a reasonable fact-finder would view the MetLife recruiter's e-mail as deceptive and/or obfuscatory. Because the Court, in reviewing a motion to dismiss, must draw reasonable inferences and resolve any doubts in favor of the plaintiff, the Court finds that the questions of (1) whether Shater's actions were objectively reasonable and (2) whether the MetLife recruiter's e-mail was deceptive raise factual issues for the jury to decide. See Chambers, 282 F.3d at 152 ; see also Heins v. Potter, 271 F.Supp.2d 545, 556 (S.D.N.Y. 2003) ("But the issue -- whether [plaintiff] knew of the 'critical facts' of his injury prior to May 2 -- must be decided at trial."). The Court is therefore not persuaded that dismissal of the Complaint is warranted under Rule 12(b)(6). See Twombly, 550 U.S. at 570, 127 S.Ct. 1955.
Upon review of the pleadings and correspondence in the record, and for the reasons described above, as well as those the Court conveyed to the parties during the September 25 Telephone Conference, it is hereby
ORDERED that the motion so deemed by the Court as filed by defendant MetLife, Inc. to dismiss (Dkt. Nos. 4, 8) the Complaint of plaintiff Walied Shater (Dkt. No. 1) is DENIED; and it is further
ORDERED that plaintiff Walied Shater is GRANTED leave to amend the Complaint to name the proper MetLife-related entity as the defendant; and it is further
ORDERED that, within ten days of the date of this Order, defendant MetLife, Inc. inform plaintiff Walied Shater and the *361 Court of the correct MetLife-related entity to be named in this action.
SO ORDERED.

The parties dispute whether MetLife, Inc. is the proper defendant in this action. While Shater has named MetLife, Inc. as the defendant, MetLife, Inc. argues that it should not be liable for the acts of its wholly-owned subsidiaries, American Life Insurance Company and MetLife Group, Inc. The Court addresses this dispute below.

The Complaint appears to allege that MetLife filled the position with a different candidate on or around November 2014. Specifically, the Complaint alleges that "the successful candidate resigned or was discharged less than two years after undertaking the position," after which MetLife again posted a job announcement for the position "[o]n or about November 22, 2016." (Complaint ¶ 35.)